**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**RAYMOND MATOS**                                      **CIVIL ACTION**

**versus**                                                       **NO. 12-2504**

**STEVE RADER**                                           **SECTION: "I" (3)**

## REPORT AND RECOMMENDATION

　　　　　This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE** as untimely.

　　　　　Petitioner, Raymond Matos, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.  On April 2, 2008, he was convicted of possession with intent to distribute MDMA and possession of Methamphetamine.[1]  On April 17, 2008, he was sentenced on the conviction for possession with intent to distribute MDMA to a term of fifteen years imprisonment, with the first five years of that sentence to be served without benefit of probation,

---

[1] State Rec., Vol. IV of V, trial transcript, p. 480; State Rec., Vol. III of V, minute entry dated April 2, 2008; State Rec., Vol. III of V, jury verdict forms.

parole, or suspension of sentence.  On that same date, he was also sentenced on the conviction for possession of Methamphetamine to a consecutive term of imprisonment of two years six months.[2] On December 23, 2008, the Louisiana First Circuit Court of Appeal affirmed those convictions and sentences.[3]  The Louisiana Supreme Court then denied petitioner's related writ application on October 30, 2009.[4]

On June 13, 2011, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[5]  That application was denied on September 14, 2011.[6] Petitioner's related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on February 29, 2012,[7] and by the Louisiana Supreme Court on September 12, 2012.[8]

---

[2] State Rec., Vol. II of V, minute entry dated April 17, 2008.

[3] State v. Matos, No. 2008-KA-1122, 2008 WL 6809593 (La. App. 1st Cir. Dec. 23, 2008); State Rec., Vol. II of V.

[4] State v. Matos, 21 So.3d 271 (La. 2009) (No. 2009-KO-0276); State Rec., Vol. II of V.

[5] State Rec., Vol. II of V.

[6] State Rec., Vol. II of V, Order dated September 14, 2011.

[7] State v. Matos, No. 2011 KW 2099 (La. App. 1st Cir. Feb. 29, 2012); State Rec., Vol. II of V.

[8] State ex rel. Matos v. State, 98 So.3d 303 (La. 2012) (No. 2012-KH-0654); State Rec., Vol. II of V.

On October 2, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[9]  The state argues that the application is untimely.[10]  The state is correct.[11]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."[12]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."  Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

---

[9] Rec. Doc. 1.

[10]  Rec. Docs. 8 and 9.

[11]  Because petitioner's federal application is clearly untimely, the Court need not address the state's alternative arguments for dismissal.

[12]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

At the very latest, petitioner's state criminal judgment became final for the purposes of the AEDPA, and his federal limitations period therefore commenced, on January 28, 2010, i.e. ninety days after the Louisiana Supreme Court denied his writ application on direct review on October 30, 2009.[13]  The federal limitations period then expired one year later on January 28, 2011, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  However, petitioner had no such applications pending at any time during the applicable one-year period.  Therefore, he is not entitled to any statutory tolling credit under 28 U.S.C. § 2244(d)(2).[14]

---

[13]  The state argues that petitioner's state criminal judgment became final even earlier because his direct-review writ application was untimely filed with the Louisiana Supreme Court.  Rec. Doc. 9, pp. 2-3.  While the state may well be correct on that point, this Court cannot make a definitive determination on that issue.  Petitioner notes that he first attempted to file his writ application before the applicable deadline; however, his application was returned to him unfiled by the Louisiana Supreme Court's Central Staff.  Rec. Doc. 1-1, p. 7; Rec. Doc. 1-2, p. 2.  Because the Louisiana Supreme Court gave no reason for denying the writ application subsequently accepted for filing, it is unclear whether that court gave petitioner the benefit of the first attempted filing.  Nevertheless, for the reasons explained in this opinion, petitioner's federal application is untimely even if this Court assumes that the Louisiana Supreme Court gave petitioner the benefit of that earlier filing and considered the writ application to have been timely filed.

[14]  The Court notes that petitioner filed a state post-conviction relief application on June 13, 2011.  However, applications filed *after* the expiration of the federal statute of limitations have no bearing on the timeliness of his federal application.  See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).  Simply put, once the federal limitations period expired, "[t]here was nothing to toll."  Butler, 533 F.3d at 318.

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 130 S.Ct. 2549, 2560 (2010).  That said, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner argues that he is entitled to equitable tolling due to the actions of his attorney, Rachel M. Yazbeck.[15]  On October 21, 2009, petitioner retained Yazbeck,[16] who filed a post-conviction application on his behalf on June 13, 2011.  That application was denied, as was the related writ application Yazbeck filed with the Louisiana First Circuit Court of Appeal.  Petitioner alleges that he was then "abandoned" by Yazbeck after the Court of Appeal's decision when he could not afford to pay her additional fees, and he therefore had to seek review by the Louisiana Supreme Court on his own.  Those allegations, even if true, fail to warrant equitable tolling for the following reasons.

---

[15]  Rec. Doc. 1-1, pp. 12-13.

[16]  Rec. Doc. 1-2, pp. 89-90.  The letter from Yazbeck regarding her services refers to her being retained to represent petitioner on "appeal."  It appears that was an error and that Yazbeck was in fact retained to pursue post-conviction relief, as petitioner alleges.

First, even if Yazbeck's actions could fairly be construed as the "abandonment" of petitioner, which they cannot,[17] any such abandonment occurred after the Court of Appeal's decision in 2012, at which time the federal limitations period had *already expired*. It therefore had no effect whatsoever on the timeliness of petitioner's federal application and so does not justify equitable tolling of the federal limitations period.

Second, Yazbeck's actions in representing petitioner in the post-conviction proceedings simply do not warrant equitable tolling. That is not to suggest that Yazbeck's performance was commendable; it clearly was not. She was retained on October 21, 2009, and therefore had ample time to represent petitioner in a manner which would have protected his ability to seek federal *habeas corpus* relief in a timely fashion. However, Yazbeck instead waited more than nineteen months to file petitioner's state post-conviction application, and his federal limitations period unfortunately expired during that prolonged delay. Nevertheless, the United States Fifth Circuit Court of Appeals has long held that such error or neglect by an attorney does not alone warrant equitable tolling of the AEDPA's limitations period. Cousin v. Lensing, 310 F.3d 843, 848-49 (5th Cir. 2002); see also United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) ("If there was ever any doubt that an attorney's error or neglect does not warrant equitable tolling, our recent decision in Cousin ... erased it ....").

---

[17]   Yazbeck was initially paid only a retainer and noted that additional fees might be required. Rec. Doc. 1-2, p. 89. Moreover, Yazbeck filed a state post-conviction application as apparently agreed. It is not reasonable to expect that she would take on the further obligation of filing a Louisiana Supreme Court writ application without additional compensation. Her refusal to perform work for free does not constitute "abandonment."

It is, of course, true that the United States Supreme Court recently carved out a limited exception to that general rule. In Holland v. Florida, 130 S.Ct. 2549, 2564 (2010), the Court held that, while a "garden variety claim of misconduct" still does not warrant equitable tolling, such tolling may be warranted if there are "far more serious instances of attorney misconduct." However, that impermissible line was not crossed here.

As an initial matter, the Court notes that Yazbeck's performance does not even begin to approach the level of misconduct recounted in Holland. In Holland, there was an almost complete breakdown in communication between Holland and his counsel. For example, for a two-year period during which post-conviction relief was being sought in the state courts, the attorney "communicated with Holland only three times – each time by letter." 130 S.Ct. at 2555. The breakdown was so severe that Holland repeatedly contacted the state courts asking that his attorney be removed from the case and even filed a complaint with the bar association. Those efforts met with no success. Id. at 2555-56. Holland therefore continued to write to his attorney, informing him that, if the Florida Supreme Court denied relief, the attorney must quickly seek relief in federal court before the deadline for doing so expired. Ignoring those letters, the attorney failed even to inform Holland when the Florida Supreme Court denied relief, much less file a timely federal application to preserve Holland's rights. Id. at 2556-57.

When he finally contacted Holland, the attorney explained that he planned to file a petition for a writ of certiorari with the United States Supreme Court. Holland immediately responded to that letter, correctly explaining to his attorney that such an application would not toll the federal limitations period. The attorney later wrote Holland, incorrectly stating that the federal

deadline had passed before the attorney was even appointed in the state proceedings.  Holland again immediately responded, pointing out the attorney's legal errors in calculating the deadline and begging him to file a federal application without delay.  The attorney neither responded to that letter nor filed a federal application.  Id. at 2558-59.  In light of those egregious circumstances, the United States Supreme Court remanded the matter for the lower courts determine whether equitable tolling was warranted.  Id. at 2565.

Nevertheless, even if the facts in Holland warranted equitable tolling, the same would not be true here.  Although it is unclear whether Yazbeck in fact understood the law and the federal ramifications of her delay in seeking state post-conviction relief, there is no evidence that she ignored efforts by her client to educate her on that point or that she severed all communication.  And unlike Holland's thwarted efforts to obtain new counsel, there is no evidence that petitioner ever sought new counsel or was unhappy in any way with Yazbeck's services at the time.

In summary, there is no indication whatsoever that Yazbeck's failures amounted to anything more than neglect and negligence.  That dooms petitioner's federal application, because, as previously explained, it is clear that mere neglect and negligence simply do not qualify as an "extraordinary circumstance" warranting equitable tolling.  Courts have continued to adhere to that general rule in the post-Holland era.  See, e.g., Rivas v. Fischer, 687 F.3d 514, 538 (2nd Cir. 2012) ("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.  Rather, in order to rise to the level necessary to constitute an extraordinary circumstance, for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective abandonment of the

attorney-client relationship." (citation and quotation marks omitted)); <u>Hutchinson v. Florida</u>, 677 F.3d 1097, 1100 (11th Cir.) ("If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction because in practically every case where there is a failure to meet the filing deadline an attorney is at fault."), <u>cert. denied</u>, 133 S.Ct. 435 (2012); <u>Brown v. Thaler</u>, 455 Fed. App'x 401, 407 (5th Cir. 2011) ("For attorney error to justify equitable tolling, the professional mistake must amount to egregious behavior and create an extraordinary circumstance.  A garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (citation, quotation marks, and brackets omitted)); <u>Wisenbaker v. Farwell</u>, 399 Fed. App'x 192, 194-95 (9th Cir. 2010) ("While [petitioner's former attorney] did give [petitioner] erroneous information about when the AEDPA statute of limitations would expire, such a garden variety claim of excusable neglect does not warrant equitable tolling."), <u>cert. denied</u>, 131 S.Ct. 1528 (2011); <u>Kingdom v. Lamerque</u>, 392 Fed. App'x 520, 522 (9th Cir. 2010) ("[T]he district court correctly determined that petitioner's evidence establishes that his lawyer erred *not* by abandoning his client, but simply by misunderstanding the filing deadline under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1).  'Garden variety' attorney error like miscalculating the AEDPA deadline is not an extraordinary circumstance warranting equitable tolling."); <u>Griffith v. Rednour</u>, 614 F.3d 328, 331 (7th Cir. 2010) (Lawyer's misunderstanding concerning how to calculate the AEDPA's filing deadline "is not 'extraordinary'; it is all too common." ... "Such a blunder does not extend the time for filing a collateral attack."), <u>cert. denied</u>,

131 S.Ct. 2960 (2011); <u>Dugas v. Cain</u>, Civ. Action No. 6:09-0673, 2010 WL 2816250 (W.D. La. June 24, 2010), <u>adopted</u>, 2010 WL 2836278 (W.D. La. July 15, 2010).

Although reaching the conclusion that equitable tolling is not warranted in this case, the Court expressly acknowledges that petitioner was in fact prejudiced by Yazbeck's performance. However, that alone does not dictate a different result, because a client is normally held accountable for and bound by his counsel's errors, even in *habeas corpus* proceedings.  <u>See, e.g.</u>, <u>Rivas v. Fischer</u>, 687 F.3d 514, 538 (2nd Cir. 2012) ("Because a lawyer is the agent of his client, the client generally must bear the risk of attorney error." (quotation marks omitted)); <u>see also</u> <u>Manning v. Epps</u>, 688 F.3d 177, 185 (5th Cir. 2012) ("The act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition.  Because pro se petitioners are expected to comply with AEDPA's statute of limitations, it would be unfair to expect less from petitioners who are represented by counsel." (citations and quotation marks omitted)).

Because petitioner is entitled to neither statutory nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before January 28, 2011.  Because his federal application was not filed until October 2, 2012,[18] it is untimely.

---

[18]  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner placed his federal application in the prison mailing system on October 2, 2012.  Rec. Doc. 1, p. 14.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Raymond Matos be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this fifth day of February, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.